**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Boyz Towing and Transport LLC, | No. CV-18-02057-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Town of Gilbert, et al., | |
| Defendants. | |

Following the termination of a contract by Defendant Town of Gilbert, Plaintiff Arizona Boyz Towing and Transport filed this action in Maricopa County Superior Court to recover damages for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, and violation of due process. (Doc. 1-2 at 4–9.) The action was removed to this court. (Doc. 1.) Defendant has filed a Motion for Summary Judgment (doc. 20), Plaintiff has filed a Response (doc. 22), and Defendant has filed a Reply (doc. 24). The Court will grant Defendant's Motion.

**I.     Background.**

On or around May 17, 2016 Arizona Boyz Towing and Transport, LLC ("Plaintiff" or "Contractor") entered into a three-year Towing Services Contract (the "Contract") with the Town of Gilbert (the "Town"). (Doc. 1-3 at 12-34.) By signing the Contract, the parties elected to continue a relationship they had established some 15 years before. (*See id.* at 48 (Notice of Claim by Arizona Boyz).) The Contract laid out the obligations of the parties

and granted Plaintiff the non-exclusive right to perform towing services for the Town. (*Id.* at 13 (Section II(3)).) The Town reserved the right to terminate the Contract for any reason – "either for the Town's convenience or because of the failure of the Contractor to fulfill his contract obligations." (*Id.* at 26 (Section XI(1)).)

On January 31, 2018, a Gilbert Fire Department crew member overheard Plaintiff's employees using profanity and racial slurs at an accident scene and in the presence of at least one member of the public. (Doc. 1-2 at 6 (Complaint in Superior Court at ¶25.) The use of "profane or vulgar language in a public area while performing Work" is a violation of the terms of the Contract and grounds for termination of the Contract. (Doc. 1-3 at 17 (Section VI(10)).) The incident was documented in a Gilbert Police Department memorandum dated Feb 15, 2018. (Doc. 1-3 at 37–39.)

On February 20, 2018, the Town attempted to exercise its right to terminate the Contract. (*Id.* at 36 (Notice of Termination).) Under the terms of the Contract, prior to termination, the Town is obligated to provide seven-days' notice of termination to Plaintiff via written notice delivered either in person or sent via registered or certified mail to the address specified in Section XIII(34) of the Contract. (Doc. 1-3 at 26 (Section XI(1)).) Here, instead of sending written notice to the address in Section XIII(34) of the Contract, the Town sent notice of termination to Plaintiff's email, which was listed under a different section of the Contract. (Doc. 23 at 4.) Specifically, the email was listed in the "Contractor Communications" provision of the Contract as the address to be used "for correspondence with the Town" and to handle transactions/business matters related to the Work performed" under the Contract. (Doc. 1-3 at 22 (Section X(1)(a)).) The emailed Notice of Termination listed the reasons for termination and stated that the contract would be terminated on February 27, 2018. (*Id*. at 36.)

On February 26, 2018, Plaintiff responded to the Notice, stating that the termination notice contained "improper accusations" and was "procedurally unsound" because it did not comply with notice requirements in Section XII of the Contract. (*Id.* at 43 (Contractor's Response to Notice of Termination.) Plaintiff added that "it is our position that the Contract

is in full-force-and-effect and will remain so until proper notice is given." (*Id.*)

On March 5, 2018, Plaintiff sent a Notice of Claim to the Town, seeking to have its claims submitted to the Town Council under Section XIII(3) of the Contract, which states:

> **Contractor Claims:** The laws of the State of Arizona shall control this Contract. In the event of any disagreement as to the proper interpretation of Contractor's duties and obligations under the Contract, the matter shall be submitted to and decided by the Town's elected governing Council or designee. The decision of the Town Council will be final. All Contractor claims against Town, financial or otherwise, shall be made in writing to the address listed in Section XIII(34) of this Contract. All such claims must be submitted within thirty (30) calendar days of the date when the claim arose or they will be deemed to have been waived by the Contractor.

(Doc. 1-3 at 28.) (*See also id.* at 49 (Notice of Claim).) Plaintiff stated its basis for requesting a hearing as follows:

> In attempting to cancel the Towing Service Contract, the Town failed to comply with its contractual obligations. Instead of complying with Section XII(2), the Town sent "notice" to terminate the Towing Service Contract in a way not authorized in the Towing Service Contract Section XIII(34) and (35). This represents a material breach by the Town and demonstrates an effort by the Town to undermine the requirements of the Towing Service Contract.

Because of this alleged material breach, Plaintiff offered to settle its claim for "not less than $350,000.00," which Plaintiff estimated was the revenue for the remainder of the Towing Services Contract. (*Id.* at 49) On March 8, 2018, the Town, in another attempt to terminate the Contract, mailed a second copy of the Notice of Termination – this time to the correct address, as listed in Section XIII(34) of the Contract. (Doc. 23 at 5, ¶ 11 (Plaintiff's Response to Defendant's Separate Statement of Facts).)

On April 27, 2018, the Town denied Plaintiff's request for a Town Council hearing. (Doc. 1-3 at 51–54.) The Town provided five reasons for the denial: (1) Contractor did not deny use of a racial slur in violation of the Contract; (2) the Town had the indisputable right to terminate the Contract for cause or for convenience with seven days' notice; (3) Contractor did not deny that it received the Town's first Notice of Termination; (4) regardless of whether the first Notice was valid, a second Notice of Termination was sent to the proper address under the Contract on March 8, 2018; (5) therefore, any claims of

improper termination of the Contract would fail. (*Id.*) The Town also disputed that the failure to send the claim to the correct address amounted to a material breach because any resulting damages were *de minimis*. (*Id.*) Finally, the Town interpreted Section XIII(3) of the Contract to authorize petitions to the Town Council only for disputes over "the proper interpretation of Contractor's duties and obligations under the Contract." (*Id.*) (*See also id.* at 28 (Section XIII(3)).) According to the Town's reading of the provision, the Contractor was not entitled to appear before the Town Council because it did not dispute its duty not to use a racial slur, but rather contested the right of the Town to terminate the contract. (*Id.* at 53.)

On June 13, 2018, Plaintiff filed this action in Maricopa County Superior Court, requesting a declaration of the terms of parties' agreement, a declaration that the Town breached the terms of the agreement, damages (compensatory, incidental, consequential and punitive), attorneys' fees and costs, and pre- and post-judgment interest. (Doc. 1-2 at 4–9.) In its Complaint, Plaintiff asserts four Counts against the Town, labeled as follows: (1) Breach of Contract, (2) Breach of Covenant of Good Faith and Fair Dealing, (3) Declaratory Relief, and (4) Violation of Due Process 42 U.S.C. § 1983. (*Id.*)

**II.     Legal Standards.**

Summary judgment is appropriate where there is no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that may affect the outcome of the case, and a dispute over a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party is able to meet its burden, the burden then shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial" without simply resting on the pleadings. *Id.* at 256. A judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at

249. However, the court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

**III. Analysis.**

    **A. Breach of Contract.**

        **1. The Town's Right to Terminate the Contract.**

"The interpretation of a contract is generally a matter of law." *Powell v. Washburn*, 211 Ariz. 553, 555, 125 P.3d 373, 376 (2006). "A general principle of contract law is that when parties bind themselves by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 138 P.3d 1210, 1213 (Ariz. Ct. App. 2006).] A contract "should be interpreted to give meaning to all of its terms, presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Allen v. Honeywell Retirement Earnings Plan*, 382 F. Supp. 2d 1139, 1165 (2005) (quoting *Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004)). "The overriding purpose of contractual interpretation is to give effect to the parties' mutual intent at the time the contract was made." *Id.*

The undisputed facts in this case establish that the Town had a right to terminate the Contract under Section VI(10). That section provides:

> Contractor shall convey a professional business image while performing Work in service of this Contract. Contractor shall deal tactfully and courteously with the Town and public. Contractor's operators and drivers shall operate Contractor's tow vehicles in a safe and prudent manner and in compliance with all traffic laws. Contractor's staff including drivers and operators shall refrain from the use of profane or vulgar language in a public area while performing Work under this Contract. Discourtesy shown to vehicle owners, drivers, passengers, or those accompanying them, shall be grounds for termination of this Contract.

(Doc. 1-3 at 17.) In short, the provision states that the use of "profane or vulgar language" while in a public place or performing Work under the Contract constitutes a violation and "grounds for termination of the Contract." (*Id.*)

Here, Plaintiff does not deny its employees used a universally offensive racial slur at the scene of an accident and in the presence of Town employees and at least one member

1 of the public. To the extent Plaintiff argues that employees of the Town also use vulgar language, Plaintiff's argument is inapposite. The Contract's terms only obligate the Plaintiff and its employees to refrain from using profane and vulgar language. (*See id.*) Any language used by the Town's employees does nothing to relieve Plaintiff of that obligation.

Plaintiff also argues that the use of racial slurs by the Town's employees led its employees to conclude that such language was not considered vulgar under the Contract. (Doc. 1-2 at 6 (Complaint at ¶26–27.) Plaintiff's argument is not persuasive. Under the plain terms of the Contract, Plaintiff's staff "shall refrain from the use of profane or vulgar language in a public area while performing Work under this Contract." (Doc. 1-3 at 17 (Section VI(10)).) Nowhere in the Contract is it stated or implied that language used by Town employees instructs on what is to be considered vulgar under the Section VI(10), and there is no evidence to suggest such a term was intended by the parties. *See Allen*, 382 F. Supp. 2d at 1165.

Plaintiff also contends that the Town has "unilaterally" defined the racial slur as offensive under the contract. Plaintiff's assertion that [the N-word] could be defined as anything other than "offensive" is disingenuous. It may be that, without a contractual definition of the terms, some language would be difficult to discern as being vulgar or profane. That is not the case here. Few words in the English language are as widely considered to be offensive as the racial epithet used by Plaintiff's employees. To find that the Town "unilaterally" determined that the slur is offensive would require the Court to ignore all common sense regarding the meaning of vulgar or profane.

The Court finds that there is no genuine dispute as to whether the Town was entitled to terminate the agreement.[1]

---

[1] Even assuming, *arguendo*, that Plaintiff's employee's use of the N-word was not considered to be vulgar or profane language, the Town would still have been entitled to terminate the Contract, because the Contract contains a "termination for convenience" provision. (Doc. 1-3 at 15 (Section XI(1)).) Such "convenience" clauses are common in government contracts, and are consistently held to be valid. *See CMS Mech. Servs., LLC v. PetSmart, Inc.*, No. CV-15-02040-PHX-NVW, 2018 WL 1586647, at *15 (D. Ariz. Mar. 31, 2018) ("'For convenience' clauses historically have been in contracts between the government and private contractors.").

### 2. Notice of Termination.

Under the terms of the Contract, in order to terminate the agreement with Plaintiff, the Town was required to: (1) provide Plaintiff with seven days' notice of the Town's intention to terminate; and (2) mail the Notice of Termination to the appropriate address. (Doc. 1-3 at 27 (Section XII(2)).)

Here, it is undisputed that on February 20, 2018, the Town mailed Plaintiff a Notice of Termination, and Plaintiff received that Notice, but the Town failed to mail the Notice to the proper address, listed in Section XIII(34). Therefore, the Town's February 20, 2018 attempt to terminate the agreement was improper under the terms of the Contract.

However, on March 8, 2018, the Town sent Plaintiff a second Notice of Termination, this time addressing the Notice to the proper address listed under Section XIII(34). (*See* Doc. 1-3 at 53 (Town's Response to Notice of Claim).) Accordingly, the Contract was terminated no later than seven days after the corrected second notice, or March 15, 2018.

## B. Due Process Claim.

### 1. Right to Hearing Before Town Council.

In its Complaint, Plaintiff alleges that the Town violated its right to due process when the Town refused to allow a hearing on Plaintiff's grievances before the Town Council. (Doc. 1-3 at 6-7, ¶¶ 66-70.) Specifically, Plaintiff relies on Section XIII(3) of the Contract, which states:

> Contractor Claims: The laws of the State of Arizona shall control this Contract. In the event of any disagreement as to the proper interpretation of Contractor's duties and obligations under the Contract, the matter shall be submitted to and decided by the Town's elected governing Council or designee. The decision of the Town Council will be final. All Contractor claims against Town, financial or otherwise, shall be made in writing to the address listed in Section XIII(34) of this Contract. All such claims must be submitted within thirty (30) calendar days of the date when the claim arose or they will be deemed to have been waived by the Contractor.

(Doc. 1-3 at 28.)

In sum, the provision states that disagreements as to the "proper interpretation of Contractor's duties and obligations" are to be submitted to and decided by the Town

Council. (*See id.* at 28 (Section XIII(3)).) The provision also sets forth the procedure by which Contractor may file claims and imposes a 30-day time limit for claims. (*Id.*) No other provision in the contract explains how to resolve disputes.

The parties have differing interpretations of this provision. (Doc. 1, Ex. A.) The Town reads the provision to mean that all claims by the Contractor must be submitted in writing to the address listed, but that only claims arising from a disagreement as to the "proper interpretation of Contractor's duties and obligations" will entitle the Contractor to a final decision from the Town Council. (Doc. 20 at 11.) The Town contends that this dispute does not give rise to a right to a hearing because it arises from a disagreement over the means by which the contract was terminated, and there is no factual dispute as to the interpretation of the Contractor's obligations under the Contract. (*Id.*) In addition, the Town contends that any right to petition the Town Council expires with the proper termination of the Contract because the provision does not contain any language to indicate it would survive the termination of the Contract, while other provisions that do contain such language. (*Id.*)[2]

In contrast, Plaintiff asserts that it is entitled to a hearing with the Town Council under the provision. (*See* Doc 22 at 6.) Plaintiff relies on the fact that Section XIII(3) is the only provision in the Contract that provides for a resolution of disagreements as to the terms of the Contract. (*Id.*) Under Plaintiff's interpretation, the provision provides for both the submission of claims ("in writing to the address listed . . . within thirty (30) calendar days of the date when the claim arose"), and for the resolution of claims ("submitted to and decided by the Town's elected governing Council or designee" whose "decision . . . will be final"). Plaintiff argues that the right to a hearing must survive the termination of the Contract or the 30-day allowance would be meaningless. The Court agrees.

A court should construe ambiguous language against the interest of the drafting party. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). Here, the Contract contains a provision that instructs courts on how to resolve ambiguity in the contract.

---

[2] For example, Section V(3) in the "Indemnification/Hold Harmless" section of the Contract contains the following language: "This provision shall survive termination or cancellation of the Contract documents."

- 8 -

Section XIII(37) reads, "No provision of this Contract shall be construed against or interpreted to the disadvantage of one party against the other by any court, arbitrator, or governmental authority, by any assertion or determination that such a party drafted or primarily drafted such provision." (Doc. 1-3 at 32.) But the Contract gives no further instruction on how ambiguity is to be resolved, so the Court will apply the default rule, and resolve ambiguity against the drafter. Accordingly, the Court finds that, under the terms of the Contract, Plaintiff's claim – that the delivery of the first Notice of Termination was improper and entitled it to damages – should have been presented to the Town Council for consideration. Additionally, the Court rejects the Town's contention that Plaintiff's right to petition the Town Council expired with the termination of the Contract. Any other construction would render meaningless the provision's guarantee of a 30-day period for such claims.

Because the Court has found that, under the terms of the Contract, Plaintiff was entitled to a hearing before the Town Council for resolution of its claims, the Court must determine whether there is a material issue of fact as to Plaintiff's due process claim.

### 2. Material Issue of Fact as to Due Process Claim.

The threshold inquiry in a due process analysis is whether a constitutionally protected property interest was created by the Contract. *Alpha, LLC v. Dartt*, 304 P.3d 1126, 1128 (Ariz. Ct. App. 2013). In exchange for agreeing to abide by the terms of the Contract, including training of employees, licensing, maintenance of insurance and other assurances, Plaintiff bargained for the "non-exclusive right to provide Work" for the Town of Gilbert, the right to be placed on a "rotation list" of contractors to be called when needed, the right to have an addendum to the Contract if the Town unilaterally increased or decreased work assigned to the Contractor, and the right to submit claims the Town Council for ultimate resolution of disputes under the Contract. (Doc 1, Ex. A at Sections II(3), VI(9), XIII(6), and XIII(3).)

The non-exclusive right to provide work for a city or and the right to be placed on a rotation list are not property rights under Arizona law. *See Alpha*, 304 P.3d at 1131 (holding

that rather than a constitutionally protected property interest, a towing company "had nothing more than a unilateral expectation or hope that such a list would continue in existence"). *See also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972 ("To have a property interest in a benefit, a person must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Thus, to the extent Plaintiff argues that the Town violated its due process claim by unilaterally terminating the Contract, Plaintiff's argument fails. No due process claim exists regarding Plaintiff's right to work under the Contract.

Because the Contract bestowed no property right, Plaintiff's argument that it has been denied due process by being deprived of a hearing before the Town Council also fails. Plaintiff may have been entitled to a hearing, but the Town's refusal to provide one does not give rise to a procedural due process claim because Plaintiff had no underlying property right at issue. *Grand Canyon Pipelines, Inc. v. City of Tempe*, 816 P.2d 247, 249 (Ct. App. 1991) ("To make a valid procedural due process claim, plaintiff must show that the City deprived it of a protected liberty or property interest without following adequate procedural safeguards."). A *constitutionally protected* right to a hearing exists to vindicate claims of arbitrary deprivation of protected property rights. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990). Where the underlying right that the hearing would protect is a contractual right and not a property right, the deprivation of such a hearing may be a breach of contract, but it is not a deprivation of due process. *Grand Canyon* Pipelines, 816 P.2d at 250 (Ariz. Ct. App. 1991).[3]

### C. Breach of Implied Covenant of Good Faith.

Every contract imposes upon parties an implied covenant of good faith and fair dealing. *CMS Mechanical Services, LLC v. PetSmart, Inc.*, No. CV-15-02040-PHX-NVW, 2018 WL 1586647, at *14 (D. Ariz. Mar. 31, 2018). As a general rule, exercising an express

---

[3] Additionally, the Court is unsure what, if any, damages resulted from the Town's refusal to allow a hearing. *See Grand Canyon Pipelines*, 816 P.2d at 250 (Ariz. Ct. App. 1991) (opining that a contractor that had no claim for damages for lost profits after being unjustly denied a contract award would likewise fail in a procedural due process claim due to the lack of an underlying property interest).

contractual right cannot be a violation of the covenant of good faith and fair dealing. *Id.* But when the contractual right is *discretionary* (such as in a termination-for-convenience clause), the rule is that a party should not abuse its discretion by acting in a way that deprives the other party of its bargained-for-rights. For example, in *Arizona's Towing Prof'l, Inc. v. State*, a state agency acted in bad faith when it canceled an existing towing services contract "for convenience" in an effort to render moot the contractor's otherwise valid appeal from the cancelation of a separate contract. 993 P.2d 1037 (Ariz. Ct. App. 1999).

Courts have found that a government's termination of a contract for convenience was an abuse of discretion in only rare circumstances. Specifically, it is an abuse of discretion to terminate a contract for convenience when the government is engaged in self-dealing, the government never intends the contract to be performed, or the government's termination evidences an animus toward the contractor. *See TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 347 (Fed. Cl. 2013) (finding that termination for convenience is in bad faith when the government "has engaged in some sort of improper self-dealing for its own benefit or to benefit another contractor); *Torncello v. United States*, 681 F.2d 756, 772 (Ct. Cl. 1982) (holding that a contracting officer is liable for breach when it exercises its right to terminate for convenience in order to accept a lower bid from another contractor).

Alternatively, courts have found a government does not abuse its discretion by terminating a contract for convenience where there is evidence of wrongdoing by the contractor, the government has not acted with animus toward the contractor, and there is obvious ulterior motive for termination. *See Kyrgoski Const. Co. v. U.S.*, 94 F.3d 1537, 1545 (Fed. Cir. 1996) (finding that termination for convenience was proper where there was no evidence that the government intended from the outset to avoid fulfilling its promises); *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1582 (Fed. Cir. 1995) (declining to limit the government's power to terminate for convenience in the absence of clear evidence that the government entered into the contract knowing that it would fail to

honor the agreement).

Arizona courts have also presumed good faith when a party terminates for convenience after the other party has failed to comply with the terms of the contract. In *Go Services, LLC v. City of Avondale*, the city did not act in bad faith when it terminated a contract for "convenience" after the owner of the towing company was arrested for two felony counts stemming from his involvement with a prior town business for which he had been general manager. No. 1 CA-CV 16-0482, 2017 WL 6328004 (Ariz. Ct. App. Dec. 12, 2017). Unlike the defendant in *Arizona's Towing Professionals*, the city in *Go Services* had a valid reason for terminating the contract and there was no indication the City had breached the terms of the agreement prior to the termination or that the termination was a bad-faith effort to escape its obligations to the contractor. The court held that the contractor had not provided any evidence to support its contention that the city had a duty to investigate the charges before terminating the contract for convenience. *Id.*

Here, there is no evidence that the Town had either animus toward Plaintiff or an ulterior motive for wishing to terminate the Contract. Instead, Plaintiff admits that it had engaged in usage of the [N-Word] while performing services for the Town under the Contract. Such wrongful conduct would justify the Town's decision to terminate the Contract for convenience. Accordingly, the Town did not breach the Contract's implied covenant of good faith by attempting to terminate the Contract in this situation. The Court will grant Defendant's Motion for Summary Judgment on this Point.

**IV. Conclusion.**

In summary, the Court finds (1) the language used by Plaintiff did constitute profane or vulgar language under Section VI(10) of the Contract, (2) the Town was entitled to terminate the Contract for Convenience, (3) Plaintiff received actual notice of the Town's intent to terminate the Contract, (4) the Town provided proper notice of its intent to terminate on March 8, 2018, and the Contract was terminated no later than March 15, 2018, (5) under the terms of the Contract, Plaintiff was entitled to a hearing before the Town Council for resolution of its claims, (6) the Town's failure to provide Plaintiff a hearing

before the Town Council did not constitute a due process violation because the Town has no constitutionally protected interest in that hearing, and (7) the Town did not breach the Contract's implied covenant of good faith because there is evidence of wrong doing by Plaintiff and no evidence of animus toward Plaintiff or self-dealing on the part of the Town. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment, and dismiss all claims against the Town.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (doc. 20) is **granted**.

2. The Clerk is directed to enter judgment against Plaintiff and terminate this action.

Dated this 15th day of February, 2019.

Honorable John Z. Boyle
United States Magistrate Judge